■ LAURA GILLEO, Appellant, v ELIZABETH A. HORTON MEMO-RIAL HOSPITAL, Respondent. [601 NYS2d 332] —In a medical malpractice action to recover damages for wrongful death and conscious pain and suffering, the plaintiff appeals from a judgment of the Supreme Court, Orange County (Patsalos, J.), entered July 19, 1990, which, upon a jury verdict, is in favor of the defendant and against her, dismissing the complaint.

Ordered that the judgment is reversed, on the law, and a new trial is granted, with costs to abide the event.

The plaintiff's decedent Phillip Gilleo developed kidney problems in 1981, which eventually deteriorated to renal failure requiring constant dialysis treatment. The decedent received his dialysis treatment at the defendant Elizabeth A. Horton Memorial Hospital (hereinafter the hospital), under the supervision of Dr. Robert Kirschner. The decedent entered and was discharged from the hospital on several occasions prior to his last admission in May 1983. This last admission involved surgery to correct a brain abscess. A portion of the decedent's brain and skull was removed. The decedent's post-operative neurological status was quite poor. In fact, a May 23, 1983, hospital note indicated that the decedent's wife was "talking about 'pulling plugs' ". Moreover, given the decedent's kidney failure and the brain abscess operation, Dr. Kirschner did not expect the decedent to leave the hospital alive.

On May 29, 1983, Nurse Theresa Gorman, a member of the hospital's nursing staff, perforated the decedent's esophagus while replacing a nasogastric feeding tube. The perforated esophagus caused food to enter the decedent's lung area instead of his stomach. Due to the decedent's already weak-

ened physical condition, surgery to correct the perforated esophagus was not performed. Dialysis treatment was eventually discontinued and the decedent died about a week after his esophagus was perforated.

The plaintiff Laura Gilleo, the decedent's wife, commenced the instant action, alleging that the hospital was negligent with respect to the nursing care and treatment rendered to the decedent. After trial, the jury returned a verdict in favor of the hospital. The plaintiff has appealed.

We conclude that the judgment in favor of the hospital should be reversed and a new trial granted due to the prejudicial impact on the plaintiff's case of certain trial errors. Reversible error was committed by permitting the defense counsel, over objections by the plaintiff's trial attorney, to propound a hypothetical question to his expert witness concerning whether Nurse Gorman acted in accordance with the training she received at Albany Medical Center College when she replaced the decedent's feeding tube. That testimony was not "based on facts supported by the evidence", nor from facts " 'fairly inferable' from the evidence" (Stringile v Rothman, 142 AD2d 637, 639; O'Shea v Sarro, 106 AD2d 435), since Nurse Gorman testified that she had no independent recollection of having replaced the feeding tube in question.

Additionally, we find that the court erred in precluding references to the third-party action brought by the hospital against the decedent's treating physician, Dr. Kirschner, which was discontinued prior to trial. Reference to that third-party action was proper as evidence of motivation and bias of the doctor which may have caused him to give testimony favorable to the hospital.

The court also erred in limiting the redirect examination of one of the plaintiff's witnesses regarding criticism of the quality of care rendered to certain patients at the hospital and resulting fines imposed by the State. We find that hospital opened the door to this relevant line of questioning when it asked the plaintiff's witness about the State licensing procedures and accreditation. The purpose of this line of questioning clearly was to demonstrate that the hospital was a model institution due to the fact that it was licensed by the State.

We note, however, that the trial court did not err in admitting evidence concerning the plaintiff's and the decedent's alleged desire to terminate the decedent's life-sustaining dialysis treatment. Since the health and life expectancy of a decedent are relevant in determining the pecuniary loss in a

wrongful death action *(see, Farrar v Brooklyn Union Gas Co.,* 73 NY2d 802, 804; *Fell v Presbyterian Hosp.,* 98 AD2d 624, 625), this evidence was properly admitted, since it was relevant to the issue of damages. Sullivan, J. P., Balletta, Ritter and Pizzuto, JJ., concur.